# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ROBERT JAY JACKSON,

                          Petitioner,                         Case Number: 06-CV-15676

v.                                           HONORABLE NANCY G. EDMUNDS

BLAINE LAFLER,

                          Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY

Petitioner Robert Jay Jackson has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan, challenges his convictions for first-degree felony murder, conspiracy to commit armed robbery, and possession of a firearm during the commission of a felony. For the reasons set forth below, the Court denies the petition.

## I.

Petitioner's convictions arise from the shooting death of Greg Blumenfeld on November 24, 2001, in Saginaw.

Mark Gotham testified that he and Blumenfeld had been best friends for the five or six years preceding Blumenfeld's death. Gotham testified that, in addition to owning his own business, Blumenfeld also sold marijuana. Blumenfeld typically carried four or five thousand dollars in cash in the front pocket of his pants. On the day Blumenfeld was shot, Gotham stopped by Blumenfeld's house in the afternoon. While he was there, an individual known to

Gotham as "Beback" and identified as Petitioner stopped by Blumenfeld's house seeking to purchase three ounces of marijuana. Blumenfeld told Petitioner he would have to stop by later because he did not have any marijuana at that time. Later that evening, Gotham accompanied Blumenfeld as he purchased four ounces of marijuana. Blumenfeld returned to Petitioner's home and left shortly thereafter.

Holly Grant testified that she and Blumenfeld had been engaged for ten years prior to his murder. They lived together in the City of Saginaw. Blumenfeld customarily carried large sums of cash in his front pants pocket. On the night of the shooting, she could see that he had a large amount of money because his pocket was bulging. Their friends Eric and Karen were visiting that evening. The four smoked marijuana. At approximately 10:00 p.m., someone knocked on the back door. Blumenfeld answered the door and let Petitioner into the home. The two men walked into the dining room. Moments later, Grant heard the back door open and saw a man with a bandana covering his face and a gun in his hand enter the home. Petitioner then also pulled a gun out of his pocket. Petitioner said, "Hit the floor." Grant did so. As she was on the ground she saw Blumenfeld get shot. The second man then pushed her toward a closet and told her to find the money. A few minutes later, she was let out of the closet and saw that Blumenfeld's pants were pulled down around his ankles and the money that had been in his pants was missing.

Karen Sundquist testified that she was present at Blumenfeld's home on the night of the shooting. At some point in the evening, Blumenfeld answered a knock at the back door and returned with Petitioner. Seconds later, another man entered the home. She heard gunshots and hid under a table. She could not identify who fired the weapon, but testified that the gunshot

came from the direction where Petitioner and Blumenfeld were standing.

Eric Bosserdet testified that he was present at Blumenfeld's home on the night of the shooting. Bosserdet testified that Petitioner entered the home through the back door. Seconds later, another man entered the home carrying a gun. Bosserdet heard a gunshot behind him while the second man was standing in front of him. Bosserdet saw Petitioner and the other man search through Blumenfeld's pants pockets. Bosserdet was unable to see whether anything was removed from Blumenfeld's pockets.

Petitioner gave a statement to police in which he admitted that he went to Blumenfeld's home to talk with him. While in the home, someone wearing a mask and waving a gun entered the home. Blumenfeld ran from the man and was shot. The man with the gun told Petitioner to "grab that stuff." Petitioner felt Blumenfeld's pants pockets, but denied taking anything. Petitioner admitted he had a gun in his pocket and had his hand on the gun in case the man in the mask shot at him. Initially, he denied shooting Blumenfeld. Eventually, he stated that Blumenfeld ran into Petitioner, bumping his arm and causing the gun to accidentally discharge. Petitioner stated he did not mean to fire the gun and did not know the identity of the man in the mask.

Petitioner did not testify in his own defense.

## II.

Following a jury trial in Saginaw County Circuit Court, Petitioner was convicted of first-degree felony murder, conspiracy to commit armed robbery, armed robbery, first-degree home invasion, and possession of a firearm during the commission of a felony. The trial court vacated the Petitioner's armed robbery and home invasion convictions on double jeopardy grounds. On

3

August 27, 2002, he was sentenced as a second habitual offender to life imprisonment for the murder conviction, thirty to sixty years' imprisonment for the conspiracy conviction, to be served concurrently with one another and consecutively to two years' imprisonment for the felony firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

I.    Did the trial court err reversibly by denying defendant's request that the jury be instructed on involuntary manslaughter?

II.   Was defendant denied a fair trial by his attorney's failure to move for a mistrial when a witness testified non-responsively that defendant had set someone on fire because he was going to testify against defendant?

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Jackson,* No. 243644 (Mich. Ct. App. Dec. 11, 2003).

Petitioner file an application for leave to appeal to the Michigan Supreme Court raising the same claims raised in the Michigan Court of Appeals and the following additional claims:

I.    Is the evidence sufficient to support armed robbery convictions?

II.   Was defendant coerced into making a false confession?

The Michigan Supreme Court denied leave to appeal. *People v. Jackson*, No. 125462 (Mich. May 28, 2007).

Petitioner file a motion for relief from judgment in the trial court, raising the following claims:

I.    The trial court clearly erred by denying defense counsel's motion to suppress custodial statements made by appellant where his rights of silence and to consult with counsel were violated, and where he was coerced and physically abused by the police.

4

II.      There was insufficient evidence to establish beyond a reasonable doubt that appellant was guilty of an armed robbery when there is no evidence of a taking of any kind in this matter.

III.    Appellant was denied his state and federal rights to due process, which require that every element of a charged offense be proven beyond a reasonable doubt, when the prosecution predicated its felony murder case against the appellant upon the underlying felony of armed robbery, and there was insufficient proof of such robbery.

IV.    Appellant was deprived of his federal due process rights and a fair trial when the prosecution breached a pretrial agreement to not use appellant's statement, except upon cross-examination of the appellant if he should testify.

V.     The prosecution knowingly allowed witness Holly Grant to give false testimony to the jury and, further, failed to correct this testimony during the course of trial, thereby depriving appellant of due process and a fair trial.

VI.    Appellant was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel at both the trial and appeal of right stages of this case.

The trial court denied the motion for relief from judgment and a subsequent motion for reconsideration. *People v. Jackson*, No. 02-021048-FC-3 (Saginaw County Circuit Court May 20, 2005 & July 25, 2005).

Petitioner filed applications for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. *People v. Jackson*, No. 264999 (Mich. Ct. App. March 9, 2006); *People v. Jackson*, No. 130874 (Mich. Oct. 31, 2006).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the following claims:

I.      Did the trial court err reversibly by denying defendant's request that the jury be instructed on involuntary manslaughter?

II.     Was defendant denied a fair trial by his attorney's failure to move for a mistrial when a witness testified non-responsively that defendant had set someone on fire

because he was going to testify against defendant?

III.     The trial court clearly erred by suppressing defense counsel's motion to suppress custodial statements made by appellant, where his rights of silence and to consult with counsel were violated, and where he was coerced and physically abused by the police.

IV.     There was insufficient evidence to establish beyond a reasonable doubt that appellant was guilty of an armed robbery when there is no evidence of a "taking" of any kind in this matter.

V.      Appellant was denied his state and federal rights to due process, which require that every element of a charged offense be proven beyond a reasonable doubt, when the prosecution predicated its felony murder case against the appellant upon the underlying felony of armed robbery, and there was insufficient proof of such robbery.

VI.     Appellant was deprived of his federal due process rights in a fair trial when the prosecution breached a pre-trial agreement to not use appellant's statement, except upon cross examination of the appellant, if he should testify.

VII.    The prosecution knowingly allowed witness Holly Grant to give false testimony to this jury and further failed to correct this testimony during the course of trial, thereby depriving appellant of due process and a fair trial.

VIII.   Appellant was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel at both the trial and appeal of rights stages of this case.

## III.

Petitioner's claims are reviewed against the standards established by the Antiterrorism an Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  This Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising the question of effective assistance of counsel, as well as other constitutional claims.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir.1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. at 521 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)) (internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) ("All factual findings by the state court are accepted by this Court unless they are clearly erroneous.").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

7

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .

> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id*. at 409, 410-11. *See also Dorchy v. Jones*, 398 F.3d 783, 787-88 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## IV.

### A.

In his first claim for habeas corpus relief, Petitioner argues that he was denied a fair trial when the trial court refused to give an involuntary manslaughter instruction. The jury was instructed on the charged offense of first-degree murder and the lesser offense of second-degree murder.

8

The Michigan Court of Appeals found that the trial court was correct in its decision not to give an involuntary manslaughter instruction. The state court reasoned as follows:

> We disagree with defendant's assertion that his statement provided evidence supporting an involuntary manslaughter instruction. Involuntary manslaughter has been repeatedly define by our Supreme Court as: "the unintentional killing of another, without malice, during the commission of an unlawful act not amounting to a felony and not naturally tending to cause great bodily harm; or during the commission of some lawful act, negligently performed; or in the negligent omission to perform a legal duty." *Mendoza, supra* at 536. Defendant was engaged in the commission of a felony, armed robbery, so the first method of committing involuntary manslaughter was not established. Defendant did not contend that he negligently performed a lawful act or that he negligently omitted to perform a legal duty. Accordingly, defendant failed to establish that an instruction on involuntary manslaughter was proper.
>
> Moreover, because the jury did not acquit defendant, we are not persuaded that a rational view of the evidence supported an involuntary manslaughter instruction. Defendant was charged and convicted of first-degree felony murder. The jury was also instructed on, but rejected, the lesser offense of second-degree murder reflected an unwillingness to convict of lesser included offense such as manslaughter. *People v Raper*, 222 Mich App 475, 483; 563 NW2d 709 (1997), *citing People v Zak*, 184 Mich App 1, 16; 547 NW2d 49 (1990). Thus, even if the trial court erred by failing to give the requested involuntary manslaughter instruction, any error was harmless. Consequently, we reject defendant's contention of instructional error.

*Jackson*, slip op. at 2-3.

While the failure to instruct on a lesser included offense can constitute constitutional error in a capital case, *Beck v. Alabama*, 447 U.S. 625, 638 (1980), the Supreme Court has specifically declined to decide whether such a requirement applies in non-capital cases. *Id.* n.14. Failure to give a lesser included offense instruction may serve as grounds for habeas relief only if "the state court so manifestly and flagrantly violated its own clearly stated law in refusing the requested instruction, that the petitioner was denied due process of law." *Todd v. Stegal*, 40 Fed. Appx. 25, 28 (6th Cir. 2002). However, the Sixth Circuit has indicated that "such occasions

9

would be rare," and that relief would be warranted under such a theory only where "the failure to give the instruction amounts to a fundamental miscarriage of justice likely to have resulted in the conviction of an innocent person." *Id*. Petitioner cannot show that the state court's failure to instruct on lesser included offenses was contrary to or an unreasonable application of Supreme Court precedent where Supreme Court precedent does not require a lesser included offense instruction in non-capital cases. Moreover, because the failure to give an involuntary manslaughter instruction would have been harmless given the jury's verdict of first-degree murder, Petitioner cannot establish on federal habeas review that the failure to give the instruction had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal quotation omitted), or resulted in a fundamental miscarriage of justice.

## B.

Petitioner claims that his trial attorney was ineffective in failing to request a mistrial after the victim's girlfriend made, what Petitioner characterizes as, highly prejudicial remarks regarding Petitioner.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing

10

professional norms.'"  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Strickland*, 466 U.S. at 688; additional internal quotations omitted).  However, when assessing counsel's performance, the reviewing court should afford counsel great deference.  *Strickland*, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner.  A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial."  *Id.*

During cross-examination by Petitioner's attorney, counsel asked the victim's girlfriend Holly Grant why she identified Petitioner as the shooter at trial, but, in her statement to police, she failed to identify him.  Grant responded as follows:

> I couldn't remember it [Petitioner's name] at the time.  I knew the face, but couldn't match it with a name, until I asked my neighbor Mandy because Beback set her boyfriend on fire. . . . Because he was going to testify against him.

Tr., Vol. I, p. 179.

Petitioner argues that this testimony was so prejudicial Petitioner no longer had a chance for a fair trial.  The Michigan Court of Appeals was "somewhat troubled" by Grant's testimony, but held that Petitioner failed to overcome the presumption that counsel's failure to object was the result of sound trial strategy.  The Michigan Court of Appeals reasoned:

11

Specifically, defendant contends that trial counsel was ineffective for failing to move for a mistrial after the victim's girlfriend made inflammatory statements that prejudiced defendant's ability to receive a fair trial. Indeed, we are somewhat troubled by the victim's girlfriend's unresponsive commentary. At the same time, however, her courtroom demeanor may very well have had a negative impact on her credibility. The record suggests that she resorted to these inflammatory comments when trial counsel was about to successfully impeach her testimony or ask her a question that she was hesitant to answer. Her reluctance to testify negatively may have raised some doubt regarding her veracity. Moreover, trial counsel was rather successful in focusing on these inconsistencies. Trial counsel may have concluded that the successful impeachment and the witness's strained efforts to avoid answering harmful questions offset the potential for prejudice. Accordingly, we are not persuaded that defendant has successfully established that trial counsel was deficient or that, but for the deficiency, a different result probably would have occurred.

*Jackson,* slip op. at 3.

The Court finds that the state court's analysis of this claim was not contrary to or an unreasonable application of Supreme Court precedent. As noted by the Michigan Court of Appeals, counsel's cross-examination of Grant was effective. Counsel effectively highlighted inconsistencies in her testimony and her possible motives for testifying. The statement at issue was inflammatory, but it was also an isolated statement in a lengthy examination. Given the relative effectiveness of counsel's cross-examination, the isolated nature of Grant's comment, and the strength of the evidence against Petitioner, it was not unreasonable for the state court to conclude that counsel's failure to request a mistrial was not ineffective.

## C.

Respondent argues that the remainder of Petitioner's claims, with the exception of the portion of claim VIII raising the same claim of ineffective assistance of counsel claim addressed above, are procedurally defaulted.

For the doctrine of procedural default to apply, a firmly established state procedural rule

12

applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001), *cert. denied*, 536 U.S. 947 (2002); *see also Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground[] only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson*, 94 F.3d at 202. Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

If the last state court from which the petitioner sought review affirmed the conviction both on the merits and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. *Rust*, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

"Whether a state court has actually enforced a procedural sanction depends on whether 'the last state court from which the petitioner sought review . . . invoked the stated procedural rule as a basis for its decision to reject reviewing the petitioner's federal claims.'" *Ivory v.*

*Jackson*, 509 F.3d 284, 291 (6th Cir. 2007), *quoting Abela v. Martin*, 380 F.3d 915, 921 (6th Cir.

2004).  Petitioner first properly raised claims II, III, and IV during state collateral proceedings.

The Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal on the

ground that Petitioner failed "to meet the burden of establishing entitlement to relief under

[Michigan Court Rule] 6.508(D)."  *People v. Jackson*, No. 264999 (Mich. Ct. App. May 9,

2006); *People v. Jackson*, No. 130874 (Mich. Oct. 3, 2006).  In *Simpson v. Jones*, 238 F.3d 399,

407-08 (6th Cir. 2000), and in *Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002), the

Sixth Circuit held that this language invokes a state procedural rule, which is sufficient to

preclude federal habeas review.

    In contrast, in *Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004), the Court of Appeals held

that denials of leave to appeal by both Michigan appellate courts that were identical to those at

issue in *Simpson* and *Borroughs*, did not invoke a state procedural rule sufficient to preclude

federal habeas review.  These seemingly inconsistent decisions can be resolved by considering

the differences in the respective trial court decisions.  In *Simpson* and *Burroughs*, the trial court

did not address the merits of the petitioner's claims.  In contrast, in *Abela*, the lower state court

ruled on the merits of the petitioner's claims, but the Michigan Supreme Court denied leave to

appeal for failure to establish entitlement to relief under Rule 6.508(D).  The Sixth Circuit

concluded that, under the circumstances, *Simpson* and *Burroughs* were inapplicable and the

petitioner's claims were not procedurally defaulted.  See *Abela* 380 F.3d at 922-24.  In *Ivory v.

Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007), cert. denied, __ U.S. __, 128 S. Ct. 1897 (2008),

the Sixth Circuit resolved the differences between the *Simpson* and *Burroughs* cases and *Abela*

by concluding that Ivory's case was more like *Simpson* and *Burroughs* than *Abela* because no

state court addressed the merits of Ivory's claims during post-conviction proceedings.

The pending case presents a procedural history similar to that of *Ivory, Simpson,* and *Borroughs*. The trial court specifically invoked Michigan Court Rule 6.508(D)(3) in denying Petitioner's motion for reconsideration of its order denying relief from judgment. Mich. Ct. R. 6.508(D)(3) is a firmly established and regularly followed state ground precluding subsequent federal habeas review absent a showing of cause and prejudice. *Luberda v. Trippett,* 211 F.3d 1004, 1007 (6th Cir. 2000), *citing Rogers v. Howes,* 144 F.3d 990 (6th Cir. 1998). Thus, the Court finds that the doctrine of procedural default is invoked.

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse this default. The Supreme Court has held that "cause" under the cause and prejudice standard must be "something *external* to the petitioner, something that cannot be fairly attributed to him." *Coleman*, 501 U.S. at 753. The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error' . . . . Attorney error that constitutes ineffective assistance of counsel is cause, however." *Id.* at 753-54 (internal citations omitted).

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional

15

judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  The prejudice standard in the context of an alleged failure to raise issues on appeal requires a showing that there is "a reasonable probability, but for counsel's unreasonable failure . . . he would have prevailed on his appeal." *Smith*, 528 U.S. at 285.  "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome.'" *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir.2002)(quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986)).

The Court considers the merits of each of these procedurally defaulted claims to ascertain counsel's reasonableness in declining to raise them on appeal.

1.

First, Petitioner argues that counsel was ineffective in failing to challenge the admissibility of Petitioner's custodial statement to police on the ground that it was taken in violation of *Edwards v. Arizona*, 451 U.S. 477 (1981), because police initiated interrogation of Petitioner after he had invoked his right to counsel.

The Fifth Amendment, which is made applicable to the states by the Fourteenth Amendment, protects an accused from compulsory self-incrimination.  In *Miranda v. Arizona*, the Supreme Court held that this prohibition against compelled self-incrimination requires that a custodial interrogation be preceded by advice that the putative defendant has the right to an attorney and the right to remain silent.  384 U.S. 436, 479 (1966).  The Court further held that if the putative defendant invokes his right to counsel, "the interrogation must cease until an attorney is present."  *Id.* at 474.  In *Edwards v. Arizona*, the Supreme Court "reconfirm[ed]" the rule established in *Miranda*, that, when a suspect has invoked the right to have counsel present

16

during custodial interrogation the suspect may not be "subject to further interrogation by the

authorities until counsel has been made available to him, unless the accused himself initiates

further communication, exchanges, or conversations with the police." 451 U.S. at 484-85; *see*

*also United States v. Dupree*, 323 F.3d 480, 486 (6th Cir. 2003). Further, after a suspect has

invoked his right to counsel, "a valid waiver of that right cannot be established by showing only

that he responded to further police-initiated custodial interrogation even if he has been advised

of his rights." *Id.* at 484. This rule "is designed to prevent police from badgering a defendant

into waiving his previously asserted *Miranda* rights." *Davis*, 512 U.S. at 458 (internal quotation

omitted). "If the suspect's statement is not an unambiguous or unequivocal request for counsel,

the officers have no obligation to stop questioning him." *Davis v. United States*, 512 U.S. 452 ,

461-62 (1994).

 The trial court denied Petitioner's motion to suppress finding that, after initially inquiring

as to obtaining an attorney, Petitioner indicated a willingness to go forward with his statement,

and knowingly waived his right to counsel.

 Petitioner's custodial statement was tape-recorded and the Court has reviewed a

transcript of the statement. The transcript shows that, after Petitioner indicated that he did not

want to proceed without an attorney, the following exchange occurred between the interrogating

officer, Detective Ruth, and Petitioner:

| | |
|---|---|
| Ruth: | Okay. . . . I'm just gonna put on the bottom of this form that you want an attorney and you do not wanna talk with us at this point in time. . . .[W]e'll conclude the interview now, it's approximately 18– |
| Petitioner: | No, we can go ahead man. |
| Ruth: | You do wanna talk? |

| | |
|---|---|
| Petitioner: | It's just, I just want, you know, it's something telling me to and then something telling me that I need a lawyer, you know what I'm saying, but you know I really didn't do nothing, so . . . |
| Ruth: | It's your option, okay?  You . . . you don't want an attorney?  You're sure?  I'm not forcing you, okay, is what I'm saying, it's your option.  If you wanna talk with us, all you need to do is sign right here by this line, okay? |
| Petitioner: | (signing) |
| Ruth: | And you signed on the bottom line, you do wanna talk to us without an attorney, correct? |
| Petitioner: | Yep. |

Transcript, Statement of Robert Jackson, pp. 3-4.

The transcript shows that the interrogating officer ceased interrogating Petitioner. Petitioner immediately indicated his desire to talk to the officer.  The officer carefully confirmed that Petitioner wished to proceed without an attorney before continuing the interrogation. Petitioner's decision to continue with the interrogation clearly was not the result of badgering. The transcript does not support a finding that the trial court erred in denying Petitioner's motion to suppress the confession.  Therefore, Court concludes that appellate counsel was not ineffective in failing to raise this issue on appeal.

2.

Petitioner next argues that insufficient evidence was presented to convict him of armed robbery because no evidence of a "taking" was presented, and that the felony-murder conviction also is invalid because it is predicated upon a finding of guilt on the armed robbery charge.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

18

charged." *In re Winship*, 397 U.S. 358, 364 (1970).  The standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The elements of armed robbery are (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a dangerous weapon or with an article used or fashioned in such a way as to lead a reasonable person to believe that it is a dangerous weapon.  *People v. Ford*, 262 Mich. App 443, 458; 687 NW2d 119 (2004). Several witnesses testified that the victim was known to carry large sums of cash in his pocket. Two witnesses testified that he was carrying a large wad of cash in his pocket on the day of the murder.  Holly Grant testified that, after she was forced into a closet, she found Blumenfeld lying on the ground, his pants pulled down around his ankles, and his pockets empty.  Eric Bosserdet testified that he saw Petitioner and the other, unidentified man search through Blumenfeld's pockets after he was shot.  Petitioner admitted to searching the victim's pockets, but denied taking anything.  Based upon this testimony, it was not unreasonable for appellate counsel to conclude that a sufficiency of the evidence claim was not potentially meritorious.

### 3.

In his sixth habeas claim, Petitioner argues that he was deprived of his right to a fair trial when the prosecution breached a pre-trial agreement not to use Petitioner's custodial statement unless Petitioner testified at trial, which Petitioner did not do.  At trial, counsel objected to the admission of Petitioner's statement on this basis.  The trial court heard argument from the

prosecutor and defense counsel.  The prosecutor stated that during an informal pretrial

conversation, he indicated to defense counsel that his strategy would be only to use Petitioner's

statement if Petitioner testified at trial.  The prosecutor stated that this was merely a statement of

his trial strategy and did not reflect any sort of agreement between the two sides.  The testimony

of certain witnesses at trial caused him to reevaluate and alter his strategy.  The trial court held

that the discussion between defense counsel and the prosecutor did not create an agreement

limiting the use of the statement.

Petitioner has presented no evidence to call the trial court's conclusion in this regard into

doubt.  Nor has he pointed to any Supreme Court precedent requiring the statement's exclusion

on this basis.  The Court, therefore, finds that appellate counsel was not ineffective in failing to

raise this issue on appeal.

4.

Petitioner argues that the prosecutor knowingly allowed witness Holly Grant to testify

falsely.

"[D]eliberate deception of a court and jurors by the presentation of known false evidence

is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153

(1972) (internal quotation omitted).  "The same result obtains when the State, although not

soliciting false evidence, allows it to go uncorrected when it appears."  *Napue v. Illinois*, 360

U.S. 264, 269 (1959).  A conviction obtained by the knowing use of perjured testimony must be

set aside "if 'the false testimony could . . . in any reasonable likelihood have affected the

judgment of the jury . . .'"  *Giglio*, 405 U.S. at 154 (*quoting Napue*, 360 U.S. at 271); *see also*

*United States v. Agurs*, 427 U.S. 97, 103 (1976).  In order to prove this claim, a petitioner must

20

show that

> (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.

*Coe v. Bell,* 161 F.3d 320, 343 (6th Cir. 1999).  Petitioner has the burden of proving a *Giglio* violation.  *Malcum v. Burt*, 276 F. Supp.2d 664, 684 (E.D. Mich.2003), *citing* Foster v. Ward, 182 F.3d 1177, 1191 (10th Cir.1999).

In this case, Petitioner has highlighted inconsistencies Grant's accounts of the shooting. Defense counsel adequately explored these inconsistencies.  Petitioner has failed to demonstrate that her trial testimony was false, rather than simply the result of confusion or an uncertain memory.  While a prosecutor may not knowingly use perjured testimony, a prosecutor is not required to ensure that prosecution witnesses' testimony be free from all confusion, inconsistency, and uncertainty.  Petitioner has failed to show that the prosecutor presented false testimony.  He has not shown that his appellate attorney's failure to raise this issue prejudiced him.

### 5.

Finally, Petitioner argues that his trial counsel was ineffective in failing to: (i) renew his objection to the admission of Petitioner's custodial statement at trial; (ii) challenge the sufficiency of the evidence at the close of the prosecutor's case; (iii) argue that the prosecutor's breach of a pretrial agreement violated Petitioner's due process rights; and (iv) impeach Holly Grant with prior inconsistent statements.  As discussed above, Petitioner has failed to show that any of these claims were meritorious.  Therefore, he cannot show that his trial attorney's failure to raise the desired arguments prejudiced him.  Likewise, he also cannot show he was prejudiced by his attorney's failure to raise this claim in the appeal of right.

21

6.

Thus, Petitioner has failed to establish cause to excuse his procedural default, and his claims are barred unless he can establish that a constitutional error resulted in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Id..* at 321. Thus, Petitioner must assert a constitutional error along with a claim of innocence. To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court further explained this standard as follows:

> The . . . standard is intended to focus the inquiry on actual innocence. In assessing the adequacy of petitioner's showing, therefore, the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on "actual innocence" allows the reviewing tribunal to consider the probative force of relevant evidence that was either excluded or unavailable at trial. . . . The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including . . . evidence tenably claimed to have been wrongly excluded or to have become available only after trial.
>
> . . . .
>
> . . . [A]ctual innocence does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

*Id.* (internal quotation omitted).

22

Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty.  Therefore, Petitioner's claims III through VIII (with the exception of the portion of claim VIII dealing with counsel's failure to request a mistrial, which is addressed above) are barred from consideration by procedural default.

## V.

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or it may wait until a notice of appeal is filed to make such a determination.  *Castro v. United States,* 310 F.3d 900, 903 (6th Cir. 2002).  In deciding to deny the habeas petition, the Court has carefully reviewed the case record and the relevant law, and concludes that it is presently best able to decide whether to issue a COA.  *See id.* at 901-02 ("[Because] 'a district judge who has just denied a habeas petition . . .  will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.) (*quoting, Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1072 (6th Cir. 1997), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997)).

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (internal quotation omitted).  In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition does not present any claims upon which habeas relief may be

granted.  Therefore, the Court will deny a certificate of appealability.

## VI.

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus

is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  May 11, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on May 11, 2009, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

24